HOOD, Judge.
This is a workmen’s compensation suit instituted by Raymond Castille against Trinity Universal Insurance Company and Lafayette Memorial Park, Inc. The defendants have appealed from a judgment rendered by the trial court condemning them to pay the compensation benefits which were demanded by plaintiff.
Plaintiff contends that on October 31, 1959, while he was working as a common laborer for Lafayette Memorial Park, Inc., he sustained an injury to his back which disabled him from performing manual labor. He received medical treatment and was discharged by his treating physician as being able to return to his employment on January 27, 1960. He reported back to work for Lafayette Memorial Park, Inc., on February 8, 1960, but he testified that within two or three hours after he began working on that date, he again felt a sharp pain in the low back area while planting some trees, and that he has been totally disabled from performing manual labor since that time. He contends that he sustained a disabling injury to his back on October 31, 1959, that he sustained a second injury to his back on February 8, 1960, that the second accident aggravated the condition of his back resulting from the first injury, and that he is totally and permanently disabled as a result of both of said accidents and injuries.
At the time the first accident allegedly occurred on October 31, 1959, the defendant employer, Lafayette Memorial Park, Inc., was not insured against claims for workmen’s compensation benefits. On January 20, 1960, however, the other defendant, Trinity Universal Insurance Company, issued a policy of insurance to the employer insuring it against claims for workmen’s compensation benefits, and that policy was in full force and effect at the time the last accident allegedly occurred on February 8, 1960.
The defendant, Lafayette Memorial Park, Inc., paid workmen’s compensation benefits to plaintiff at the rate of $22.50 per week for twelve weeks, covering the period from October 31, 1959, until January 23, 1960, together with all medical expenses incurred up to that date. Plaintiff demands judgment condemning both of the defendants to pay compensation benefits at the same rate for a period of 400 weeks, beginning October 31,1959, subject to a credit for payments made by either of the defendants for the first twelve weeks of that period.
The trial judge concluded that plaintiff sustained a compensable accident on October 31, 1959, that when he returned to work on February 8, 1960, “he was somewhat improved but not totally recovered” from the effects of the first accident, that on February 8, 1960, he re-injured his back while again working for his employer, and that “as a result of the October accident, as aggravated by the injury of February 8, 1960, plaintiff has been totally disabled.” The trial judge further concluded that since both of these accidents contributed to plaintiff’s present condition, the defendants are jointly responsible for compensation benefits. Judgment was rendered, therefore, condemning defendants to pay the compensation benefits claimed by plaintiff.
There is no dispute as to the rate of compensation benefits which would be due if there is liability. Both of the defendants contend, however, that plaintiff has failed to show that an accident occurred in the course of his employment either on October 31, 1959, or on February 8, 1960, and that plaintiff also has failed to show that he has any disability resulting from a work-connected accident. Defendant, Memorial Park, contends alternatively that prior to February, 1960, plaintiff had completely recovered from the injuries which he received in October, 1959, and that if he is disabled at all at the present time, it is solely as a result of the injuries which he re *649 ceived on February 8, 1960. Defendant, Trinity Universal Insurance Company, contends alternatively that if plaintiff has any disability at the present time it is the result of the accident which occurred in October, 1959, before it had issued a policy of insurance to the employer, and not as the result of any accident which may have occurred in February of 1960.
Only factual issues are presented, and as we have already pointed out, they were resolved by the trial judge in favor of plaintiff.
Plaintiff was thirty-six years of age at the time the first accident allegedly occurred. He had been employed by Memorial Park for approximately two years prior to that time, and previously he had worked as a farm laborer. Although his employer testified that he had complained of back pain before October 31, 1959, plaintiff denied that he had had any prior back trouble, and there is no evidence to show that he had ever received any medical treatment relating to his back. We agree with the trial judge in his conclusion that plaintiff had had no disability relating to his back prior to October 31, 1959.
On this last mentioned date, plaintiff and a fellow employee, his uncle, were endeavoring to lift a 300-pound concrete grave marker out of a jeep. While so engaged, the major portion of the weight of the marker shifted to plaintiff, and he testified that that caused him to twist his back and to experience severe pain in the low back area. He complained of pain to his fellow employee and he discontinued work immediately after this occurred. The doctor who began treating him about three weeks later found that he had a lumbar or lumbo-sacral strain, and he concluded that it had been sustained in the accident which was described by plaintiff as having occurred on October 31, 1959. Plaintiff’s testimony as to that accident is confirmed by that of his uncle, who was the only other person present at the time. Defendants point out that there are some inconsistencies in the testimony of plaintiff and that of other witnesses as to facts and circumstances surrounding the occurrence of the accident, and they argue that the evidence thus fails to establish that an accident occurred on that date. After considering all of the evidence, we agree with the trial judge in his conclusion that an accident did occur on October 31, 1959, and that as a result of that accident plaintiff sustained a disabling back injury.
Dr. Philip Purpera, a general practitioner, treated plaintiff from November 24, 1959 until January 27, 1960. He concluded that plaintiff sustained a lumbar or lumbo-sacral strain as a result of the accident which occurred in October, 1959, that the injury was of such a nature as to disable him from performing manual labor after that date, but that by January 27, 1960, plaintiff had recovered sufficiently to return to his employment. He found no evidence of a ruptured intervertebral disc. Substantially the same conclusions were reached at that time by Dr. William L. Zink, a general surgeon, who examined plaintiff initially on January 8, 1960.
Pursuant to the recommendations of Dr. Purpera and Dr. Zink, plaintiff returned to work for Memorial Park on February 8, 1960. About two or three hours after he started to work on that day, and while he and two other employees were engaged in planting some trees, he testified that he again felt a severe pain in the low back area. He stated that he experienced the pain while dragging a 90 or 100-pound tree to the place where it was to be planted, that he reported the accident to his coworkers and his employer, and that he discontinued working immediately. Only one of the other employees was called as a witness, and he testified that plaintiff quit work and left the place of employment that morning, complaining of being cold and sick and having pain in his back. Plaintiff sought medical attention, and thereafter he submitted to a myelogram and then to sur *650 gery for the removal of a portion of a ruptured intervertebral disc.
Defendants call our attention to some discrepancies in the testimony of some of the witnesses as to the facts relating to this second alleged accident. We find no significant inconsistencies in the testimony, however, and we agree with the trial judge that an accident did occur on February 8, 1960, as contended by plaintiff.
Dr. Ray J. Haddad, Jr., an- orthopedic surgeon, assisted in the performance of a myelogram on plaintiff’s back on May 20, 1960, which procedure indicated that plaintiff had a ruptured intervertebral disc at the level of L-4 and L-5, on the right. On May 31, 1960, surgery was performed for the removal of a portion of that disc on the right side, with Dr. Haddad assisting in performing the operation. This surgery confirmed the prior diagnosis of a ruptured intervertebral disc, on the right side. During the course of that surgery, no examination was made of the left side of that disc since there had been no indication of a rupture on that side. Dr. Haddad testified that either of the two accidents could have aggravated a pre-existing diseased condition of plaintiff’s back, causing the disability.
Prior to the performance of this surgery, plaintiff had complained of pain radiating down his right leg. After the operation, however, he complained of pain radiating down his left leg, indicating a rupture of the disc at the same level but on the left side. Dr. Haddad testified that although he found no symptoms of a rupture on the left side at the time surgery was performed, it is possible that plaintiff could have a ruptured disc at the same level on the left side.
After the surgery had been performed, plaintiff was examined on four occasions by Dr. James Gilly, an orthopedic surgeon. He also was examined by Dr. J. P. Hooker and by Dr. John D. Jackson, both of whom are neurosurgeons, and he was examined and treated on numerous occasions by Dr. Zink. As a result of examinations made after this surgery, Dr. Gilly concluded that plaintiff had a rupture of the intervertebral disc on the left side, in the vicinity of L-4 and 1L-5, that he was disabled from performing manual labor, and that his present disability could have resulted from both traumas. Dr. Plooker found no objective evidence indicating a ruptured disc, but he felt that plaintiff had some stiffness from the surgery which disabled him from performing heavy labor, although he felt that he could perform some degree of light or moderate work. Dr. Jackson concluded that plaintiff had a ruptured disc, and that he was unable to perform any type of manual labor as of the date of the last examination on April 3, 1962. Dr. Zink was unable to make a diagnosis of ruptured disc, but he feels that plaintiff has pressure on the nerve roots which causes pain, and that this pressure results from plaintiff’s leaning away from the right side to compensate for the injury on that side.
The evidence convinces us, as it did the trial judge, that plaintiff sustained a disabling injury to his back on October 31, 1959, and that before he recovered from that disability he sustained another trauma to his back on February 8, 1960, which aggravated the first injury. We believe that plaintiff now has a ruptured intervertebral disc or some type of nerve root pressure in the low back area, that he is totally disabled from performing manual labor, and that it is uncertain as to how long this disability may continue.
Since plaintiff had no back trouble prior to October 31, 1959, and no other traumatic experiences have been shown, it is apparent that his present disability results from one or both of the above described accidents. Although two physicians felt that he had recovered from the first injury by the time he returned to work for his employer in February, 1960, it seems obvious that he *651 either had not recovered or that the first injury had left his back in such a condition that it was susceptible to additional and more serious injury with very little trauma. The evidence indicates that plaintiff did not sustain a ruptured disc as a result of the first accident, but it does not show when he would have recovered from the injury which he did receive at that time. Also, in view of his past work record, it seems unlikely that he would have sustained a ruptured disc or a similar injury as the result of the seemingly minor trauma which he received on February 8, 1960, unless his back had been made more amenable to injury by the first accident.
After considering all of the evidence, we conclude that plaintiff’s present disability was caused by or resulted from a combination of the two accidents. We find no error in the holding of the trial judge, therefore, that plaintiff has been totally disabled “as a result of the October accident, as aggravated by the injury of February 8, 1960.”
 Since no policy of insurance was in effect at the time the first accident occurred, the defendant, Trinity Universal Insurance Company, would not be liable for compensation benefits due solely as the result of the first accident. In this instance, however, we have found that plaintiff’s present disability resulted from a combination of both injuries, that is the injury which he sustained before the policy was issued by Trinity and the injury which he sustained after that policy was issued and while it was in effect. We conclude, therefore, that both of the defendants are liable for the compensation benefits due plaintiff. See Brock v. Jones & Laughlin Supply Co., La.App. 1 Cir., 39 So.2d 904; White v. Taylor, La.App. 2 Cir., 5 So.2d 337 (cert, denied); and Malone, Louisiana Workmen’s Compensation Law and Practice, Section 233, pp. 285, et seq.
For the reasons herein assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendants-appellants.
Affirmed.