302 So.2d 641 (1974)
Willie D. SCOTT, Plaintiff and Appellant,
v.
HARTFORD ACCIDENT & INDEMNITY COMPANY et al., Defendants and Appellants.
No. 4678.
Court of Appeal of Louisiana, Third Circuit.
October 16, 1974.
Rehearing Denied November 20, 1974.
*642 Gold, Hall, Hammill & Little by James D. Davis, Alexandria, for Houston Gen. Ins. Co.
Brittain & Williams, by Jack O. Brittain, Natchitoches, for Hartford Accident & Indemnity Co. and others.
Gerard F. Thomas, Jr., Natchitoches, for appellant Scott.
*643 Before HOOD, CULPEPPER and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
This is a workmen's compensation suit in which the plaintiff, Mrs. Willie D. Scott, alleges that she sustained lower back injuries on or about September 22, 1972, and March 30, 1973, while in the employ of Natchitoches Manor Nursing Home, Inc., and that as a result of said injuries she has become totally disabled. Defendants are the plaintiff's former employer (the nursing home), Hartford Accident and Indemnity Company (the nursing home's workmen's compensation insurer in September, 1972), and Houston General Insurance Company (workmen's compensation insurer of the defendant-nursing home in March, 1973).
Judgment was originally rendered in favor of the plaintiff for total and permanent disability benefits, medical expenses, and penalties and attorney's fees, solely against the defendant, Houston General Insurance Company. Subsequently, however, a new trial was granted[1] and the district judge amended his former decree to include the defendant nursing home as a liable party and to dismiss all claims for penalties and attorney's fees. From said judgment the plaintiff, the defendant nursing home, and Houston General Insurance Company have appealed. Hartford Accident and Indemnity Company has neither appealed nor answered the appeal.
The facts leading up to this suit are as follows: In September, 1972, the plaintiff was employed at the defendant-nursing home as an aid and laborer and as such was required to perform the usual duties surrounding the assistance and care of elderly patients, i.e. cleaning and waxing of floors, moving of beds and furniture, lifting of patients, etc. While in such employ, on or about September 22, 1972, the plaintiff sustained an injury to her lower back as she was engaged in lifting a mop bucket filled with water. As a result she was hospitalized for four days under the care of Dr. David T. Henry, who diagnosed her problem as an acute lumbosacral sprain. Mrs. Scott saw her treating physician a number of times during the months following her release from the hospital. During said period, although her back condition improved, she continued to have diminished paravertebral spasms and pain. Plaintiff was also referred for consultation to an orthopaedic surgeon, Dr. J. P. Williams of Shreveport, whom she saw on October 18th. His findings were consistent with those of Doctor Henry. Mrs. Scott was again examined by Doctor Henry on December 15, 1972, at which time she asked that she be allowed to return to work. At this time she was experiencing less pain than before (although on continued medication) and Doctor Henry explained that the only way she would know if she could work was to return and try. Plaintiff did in fact return to her former duties at the nursing home on January 1, 1973.
During the three-month period following plaintiff's September 22, 1972, accident she was considered by Doctor Henry to be disabled from returning to her former job duties. As a result the nursing home's compensation insurer, Hartford, paid all of plaintiff's medical expenses as well as workmen's compensation benefits (at the rate of $41.60 per week) during said period. Subsequent to the aforementioned December 15th doctor's visit, Doctor Henry forwarded a report to plaintiff's employer indicating that as of December 29, 1972, the plaintiff could resume work and was capable of doing the same work as before her injury with no permanent disability. *644 Thereafter Hartford discontinued workmen's compensation benefits.
Subsequently plaintiff was twice seen by Doctor Henry in February, 1973. Even though she had returned to work Doctor Henry testified Mrs. Scott was still having lower back pain during this period, and also began to experience stomach problems. On March 30th plaintiff again visited Doctor Henry and explained that she had experienced a sudden acute episode of lower back pain in the same area as before. The doctor's findings were essentially the same as after the September, 1972, injury and he diagnosed an acute bilateral lumbosacral sprain. At this visit Mrs. Scott did not explain what had precipitated the onset but did state that it was sudden and acute. Thereafter, in a later visit, the doctor learned that the plaintiff was bent over cranking up a hospital bed when the acute pain set in. Subsequently on April 8th plaintiff was admitted to the local hospital for her back problems as well as her stomach complaints.
Following the March 30th incident (and subsequent hospitalization) Doctor Henry once again considered the plaintiff disabled from performing the manual labor related to her former job.
In the ensuing months the defendant-nursing home received several hospital and doctor's bills and statements related to the plaintiff's March 30th injury. The nursing home was of the opinion that the latter injury was related to the earlier September, 1972, injury so it forwarded the bills and reports to the insurer at that earlier date, Hartford. Previously, however, in February, 1973, the defendant, Houston General, had acquired the contract to insure Natchitoches Manor. Apparently this latter insurer was not notified of plaintiff's claims at this time and did not learn of such until eight days prior to trial. Subsequent demand was made by plaintiff upon Hartford for resumption of compensation benefits and for the hospital and doctor bills incurred after the March 30th injury. After receiving no payment plaintiff filed suit on September 19, 1973.
As aforementioned, a final judgment was rendered in favor of the plaintiff against Houston General and Natchitoches Manor Nursing Home for workmen's compensation benefits and medical expenses. In so holding the trial judge was of the opinion that plaintiff's disability was due entirely to the injury of March 30th, 1973 (at which time Houston General was the insurer of the defendant-nursing home).
Plaintiff appeals said judgment claiming disability benefits (as were granted by the trial judge) regardless of whether either or both of the injuries were the cause of her condition and additionally alleges that penalties and attorney's fees should be assessed.
Houston General also appeals alleging that plaintiff's disability is due entirely to the September 22, 1972, accident and that no accident took place on March 30, 1973. Alternatively it asserts that the second injury was only a contributing cause or aggravation of the first and therefore both it and Hartford should be liable in solido. Houston also claims no liability for penalties and attorney's fees.
Hartford in turn argues in brief that plaintiff's disability is due entirely to the March 30, 1973, injury, and as a result it cannot be liable for compensation or penalties and attorney's fees since it was not the insurer of the defendant nursing home on that date.
Two issues are therefore presented for determination on appeal.
We address ourselves to the first, being whether plaintiff's present disability resulted from the accident which occurred in September, 1972, whether same is due solely to the alleged incident in March, 1973, or whether both of those accidents caused the disability.
If either accident was the sole cause of plaintiff's disability, only one of the defendant-insurers *645 would be liable for compensation benefits, payable on account of total disability. Pender v. National Fire & Marine Ins. Co., 255 So.2d 95 (La.App.3rd Cir. 1971); Castille v. Trinity Universal Ins. Co., 177 So.2d 647 (La.App. 3rd Cir. 1965); Employers Liability Assurance Corp. v. General Accident, Fire & Life Assurance Corp., 148 So.2d 425 (La.App. 1st Cir. 1962).
However, if plaintiff's present disability is due to a combination of both incidents or by virtue of the second accident aggravating the prior injury, both the present compensation insurer and the insurer at the time of the first accident would be liable in solido for compensation benefits. Pender v. National Fire & Marine Ins. Co., supra; Castille v. Trinity Universal Ins. Co., supra; Stockstill v. Bituminous Casualty Corp., 144 So.2d 918 (La.App. 4th Cir. 1962); Fontenot v. Great American Indemnity Co., 127 So.2d 822 (La.App. 3rd Cir. 1961); Stansbury v. National Auto & Cas. Ins. Co., 52 So.2d 300 (La.App. 1st Cir. 1951); White v. Taylor, 5 So.2d 337 (La.App. 2nd Cir. 1941).
We find as a matter of fact that both incidents caused or contributed to plaintiff's disabling condition. The only physician to testify, Dr. David Henry, clearly indicates that in his opinion the March 30th incident was an acute re-acceleration or aggravation of the pre-existing condition. There is nothing in the record to substantiate the contention that the March 30th injury was the sole cause of plaintiff's present disability. The evidence further reflects that plaintiff never fully recovered from the September, 1972, injury. She was, however, able to return to work with minimal pain until the March, 1973, incident. Thereafter she has been disabled from returning to her former job duties.
Accordingly, we hold both insurers and the defendant-nursing home liable in solido for workmen's compensation benefits due as a result of plaintiff's present disability, plus medical expenses incurred therewith.
The second and remaining issue is that of penalties and attorney's fees.
Insofar as Houston General is concerned, we agree with the trial judge that penalties and attorney's fees are not due. Its first notice of a claim by plaintiff was October 30, 1973, only eight days prior to the first trial date. Under these circumstances we cannot therefore see how this insurer can be termed arbitrary and capricious in its behavior.
Hartford, on the other hand, was notified by the nursing home of plaintiff's hospitalization and medical bills after the March 30, 1973, injury. It apparently concluded that the disability was due entirely to the March 30, 1973, accident and not a re-occurrence or aggravation of the September, 1972, injury. As a result, since it was not the insurer of the defendant nursing home in March, 1973, it took the firm position that it had no responsibility for workmen's compensation benefits or medical expenses.
This stand taken by the insurance company did not change even upon receipt of a letter, dated August 6, 1973, from plaintiff's attorney demanding workmen's compensation benefits. Attached thereto was a report from Dr. David T. Henry to plaintiff's attorney which stated clearly that plaintiff's disability at that time was causally related to the first accident. The defendant had no contrary medical evidence in its possession.
Hartford still refused payment and as a result the plaintiff had no choice but to commence these proceedings. We conclude such action was arbitrary, capricious, and without probable cause, under LSA-R.S. 22:658 and 23:1201.2, and as a result penalties and attorney's fees should be assessed.
In regard to the amount of attorney's fees the appellant seeks an award of *646 $3,000.00. We deem such an award to be proper under the circumstances herein. See Bushnell v. Southern Farm Bureau Casualty Ins. Co., 271 So.2d 267 (La.App.3rd Cir. 1972).
For the above and foregoing reasons the judgment of the trial court is affirmed insofar as it dismissed claims for penalties and attorney's fees against Houston General Insurance Company. The judgment in respect to liability, however, is reversed and it is hereby ordered, adjudged, and decreed that there be judgment in favor of the plaintiff and against the defendants, Hartford Accident and Indemnity Company, Houston General Insurance Company, and Natchitoches Manor Nursing Home, Inc., in solido for workmen's compensation benefits in the sum of $42.80 per week from March 30, 1973, during plaintiff's period of disability, not to exceed a total of five hundred weeks, together with legal interest on each past due installment from its due date until paid, subject to a credit for those amounts previously paid. Plaintiff is further awarded judgment against said defendants in solido for all medical expenses incurred in connection with plaintiff's present disability, to the legal maximum. There will be further judgment in favor of the plaintiff and against Hartford Accident and Indemnity Co. in the amount of $3,000.00 attorney's fees, plus penalties at the rate of 12% of plaintiff's claim. Costs at both trial and on appeal are assessed against all three defendants.
Affirmed in part, reversed in part, and rendered.
HOOD, J., dissents and assigns written reasons.
HOOD, Judge (dissenting).
I am unable to agree with the two major conclusions reached by the majority. In my opinion the judgment of the trial court is correct and should be affirmed.
I disagree, first, with the finding by my colleagues that there was a causal connection between plaintiff's present disability and the first accident which occurred on September 22, 1972. The trial judge found, on two separate occasions, once when the case was tried originally and again after a new trial had been held, that plaintiff had completely recovered from the injuries which she sustained in the first accident, and that that accident had no relation whatsoever to her present disability. The majority has reversed that factual finding of the trial court. I think the evidence overwhelmingly supports the trial court's finding as to that fact.
Second, I disagree with the conclusion reached by the majority that Hartford Accident & Indemnity Company should be condemned to pay penalties and attorney's fees. Regardless of the conclusion which may be reached as to a causal connection between the first accident and plaintiff's disability, the evidence does not show that Hartford was arbitrary and capricious in refusing to pay compensation benefits following the March, 1973, accident.
My colleagues have described two work-connected accidents, one of which occurred on September 22, 1972, and the other on March 30, 1973 (actually the last accident occurred on March 29, 1973). They, however, have completely overlooked or ignored the fact that plaintiff was involved in two automobile accidents (neither of which occurred in the course of her employment) shortly after March 30, 1973, and in each of those accidents she sustained injuries which were far more serious than those which she sustained in either of the above mentioned work-connected accidents.
She was involved in a motor vehicle collision on May 25, 1973, exactly six weeks after she was discharged from the hospital following her second work-connected accident. As a result of that collision she sustained a cervical sprain and a lumbar sprain. She was hospitalized from May 26 *647 until June 1, 1973, during which time she was placed in traction and was administered tranquilizers and physical therapy for her neck and back injuries.
Mrs. Scott was involved in another automobile collision on October 19, 1973, and as a result of that accident she sustained a mild sprain of her shoulder and a sprain of the biceps muscle in her upper arm.
Defendant Hartford was aware of the work-connected accident which occurred on March 30, 1973, and it knew about the automobile accident which occurred on May 25, 1973, when demand was first made upon it for payment of compensation benefits on August 6, 1973. In making demand on Hartford for compensation benefits on the last mentioned date, plaintiff's attorney sent to Hartford a report from Dr. David T. Henry, plaintiff's treating physician, dated August 2, 1973, which contains the following statements relating to the first automobile accident:
"On May 25th, 1973, this patient was also involved in an automobile accident in which she was struck by an automobile, the history of which is obtained from the forwarded copy of her hospitalization record at that time. During the period of time she was hospitalized for treatment of exascerbation of her cervical and lumbar strain due to the trauma suffered at the time of the automobile accident it was elected to re-evaluate her duodenal ulcer."
* * * * * *
"In June of 1973 she was examined after having been hospitalized for the superimposed trauma of her automobile accident May 25th and found to have trapezius muscle spasm and a exascerbated lumbar sprain, as well as continuation of her gastric discomfort."
This suit was filed on September 19, 1973, about six weeks after demand was made upon Hartford. The second automobile accident occurred one month later, on October 19, 1973, and the case was tried on November 6, 1973. Hartford thus was award of Both of the subsequent automobile accidents and the disabling injuries which plaintiff sustained in both of those accidents before the case came up for trial originally.
After the case was tried initially on November 6, 1973, the trial judge concluded that there was no causal connection between the first work-connected accident, which occurred on September 22, 1972, and her present disability. In the written reasons assigned by the trial judge, he said:
"The court finds that the present disability is caused by the accident of March 1973. In accepting the testimony of Dr. David T. Henry M.D., the court finds that the plaintiff had been hurt in Sept. 1972 but had recovered and released on Dec. 15, 1972 by Dr. Henry to return to her work with `with no qualifications'. She did in fact return to work at the same job doing substantially the same duties until she hurt her back in March 1973 cranking up a bed on which a patient was lying."
A new trial was granted because Houston General Insurance Company had not been made a party to the suit. The new trial was held on March 4, 1974, and following that trial the trial judge again concluded that plaintiff had fully recovered from the first accident which occurred on September 22, 1972, and that there was no causal connection between that accident and her present disabilities. In the written reasons assigned by the trial judge following the second trial, he said:
"The Court holds that the injury of September, 1972, caused plaintiff to have a total, temporary disability. By December 15, 1972, plaintiff had been released by the treating physician, Dr. D. T. Henry, to return to her work without reservation. She did return to work and did her duties until the injury of March, 1973."

* * * * * *
*648 "The Court is still of the opinion that Dr. Henry had released the plaintiff as being well and able to return to full employment following her accident of September, 1972, and that she had a new injury causing new disability in March of 1973."
* * * * * *
"Hartford has been found not to be responsible for workmen's compensation benefits; Houston did not know of the claim until the suit was filed, and I do not hold now that Houston was arbitrary and capricious."
The majority states, correctly, that plaintiff was seen twice by Dr. Henry in February, 1973, that is, between the time she returned to work and the time she sustained her second work-connected injury on March 30, 1973. The opinion intimates that the doctor examined or treated plaintiff for a back condition on those two visits. I find his testimony to be to the contrary. Both visits made to the doctor in February, 1973, were solely and only for treatment for gastric pains. Dr. Henry stated that she did not complain of her back condition on either of those visits, and that he has no notes in his records of any complaints of pain in her back from the time he discharged her in December, 1972, until he saw her in the hospital again in April, 1973, following the second accident. I think it is significant that plaintiff returned to work and performed all of her duties during that period of about three and one-half months, between the first and second work-connected accidents, without any complaint as to her back and without seeking any medical treatment for her back condition.
The evidence convinces me, as it did the trial judge who heard and observed all of the witnesses, that plaintiff had completely recovered from the injuries which she sustained as the result of the first accident which occurred on September 22, 1972, and that there is no causal connection between that accident and her present disability.
We have held many times that the factual findings of the trial judge are entitled to great weight, and that his findings as to the facts will not be disturbed unless found to be clearly or manifestly erroneous. The majority does not even give lip service to that established rule here. The evidence in this case preponderates to the effect that plaintiff has fully recovered from the injuries she sustained on September 22, 1972. Actually, I think it establishes that her present disability resulted solely from the automobile accidents which occurred after the last work-connected accident. I cannot say that the trial judge erred, however, in concluding that her disability resulted from the accident which occurred on March 30, 1973, and in view of the weight which we should allow to his factual findings, I feel that that factual finding should be affirmed.
Assuming, however, that the majority is correct in concluding that her present disability resulted from both of the work-connected accidents, that is, the one which occurred on September 22, 1972, and the accident which occurred on March 30, 1973, I cannot agree that Hartford was arbitrary and capricious in failing to pay workmen's compensation benefits following the second accident.
Hartford promptly paid all of the medical expenses and compensation benefits due following the first accident which occurred while it was the insurer of plaintiff's employer. The second accident occurred, however, after Hartford's policy had expired and while the nursing home was insured by Houston General Insurance Company.
Hartford had received a report from the treating physician in December, 1972, that plaintiff had fully recovered from the relatively minor injuries which she received in September of that year. It knew that plaintiff had returned to work about the middle of that month and had performed all of her duties for a period of more than three months, that she had not complained *649 of any back ailment and had not sought medical treatment for her back during that time, and that she had sustained another injury on March 30, 1973, which was severe enough to cause her to be hospitalized. Hartford was not the insurer of plaintiff's employer at the time the second accident occurred. Hartford also knew about the automobile collision which occurred less than two months after that second work-connected accident, in which plaintiff sustained serious neck and back injuries which again required hospitalization, and it knew about the other automobile collision which occurred in October, 1973, in which plaintiff sustained additional injuries. Under those circumstances, I think Hartford was completely reasonable and justified in concluding, or at least in waiting for a judicial determination, that plaintiff's present disability did not result from the original accident which occurred on September 22, 1972.
I cannot agree with the reasoning of the majority in holding that Hartford was unreasonable and capricious in questioning its obligation to pay further compensation benefits, in view of the fact that the trial judge concluded, after two separate trials, that Hartford was correct in its conclusions and that plaintiff's present disability was not caused in any way by the accident which occurred in September, 1972. The evidence has been reviewed by four judges, that is, by the trial judge and three judges on this court. Two of the four judges, including the trier of the facts, find that Hartford was correct in its conclusion, while the other two judges, neither of whom saw or heard the witnesses, find that Hartford was incorrect. I strongly disagree with the holding that Hartford was unreasonable, arbitrary or capricious in refusing to pay compensation, when one-half of all of the judges who have considered the case feel that it was reasonable, justified and correct in doing so.
My colleagues base their holding that Hartford was arbitrary and capricious in failing to pay additional compensation benefits on the fact that it received a formal demand for compensation benefits from plaintiff's attorney and a report from Dr. Henry which stated that plaintiff's disability was causally related to the first accident. I do not believe that the demand of plaintiff's counsel and one doctor's report is an adequate basis for concluding that Hartford was arbitrary and capricious in refusing to pay compensation benefits, especially in view of the other facts present in this case of which Hartford was aware.
In my opinion that majority has erred in reversing the factual findings of the trial court in this case and in condemning Hartford to pay penalties and attorney's fees.
For these reasons, I respectfully dissent.
NOTES
[1] Actually Houston General had inadvertently not been made a party defendant in the initial suit. As a result plaintiff's attorney amended the original petition making Houston a party defendant and a new trial was granted wherein the parties offered the testimony and documents originally filed at the first trial, in addition to being allowed to place into the record whatever evidence they considered useful for review by the Court of Appeal.